## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **LARRY E. SLOAN,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:16-00202-KD-C** |
| | ) | |
| **JAMES P. CUNNINGHAM,** | ) | |
| **Defendant/Counterclaim Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ECOVERY, LLC,** | ) | |
| **Counterclaim Defendant.** | ) | |

## ORDER

This matter is before the Court on Larry Sloan's Motion for Summary Judgment as to Count One of his Claim, and Sloan and Ecovery, LLC's joint Motion for Summary Judgment as to all counterclaims asserted by James P. Cunningham (Doc. 46), Cunningham's Response (Doc. 55) and Sloan and Ecovery, LLC's Reply (Doc. 59). The Court also relied upon supplemental briefing that addressed whether Alabama law requires additional consideration when parties to a contract mutually assent to a modification. (See Doc. 62, 63, & 64). For the reasons provided below, summary judgment is **GRANTED** as to Count One. Because Cunningham does not contest Sloan's motion "as it relates to [his] counterclaims," (Doc. 55 at 1), against both Sloan and Ecovery, Sloan and Ecovery's Motion for Summary Judgment as to each counterclaim is **GRANTED**.

## I.    Findings of Fact[1]

---

[1] On summary judgment, the Court must "resolve all issues of material fact in favor of the [non-movant], and then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts." McDowell v. Brown, 392 F.3d 1283, 1288 (11th Cir. 2004). Also, "what is considered to be 'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial, but those are the facts at this

(Continued)

James P. Cunningham and Larry Sloan began working together on a new venture in the spring of 2008. (Doc. 55-1 at 2). The collaboration resulted in the formation of Ecovery, LLC. (Id. at 5). Ecovery's articles of organization were filed on July 17, 2008. (Doc. 47-1 at 1). Members of Ecovery included both Sloan and Cunningham along with two other individuals, Walter Norris and Mauro Guidetti. Ecovery originally divided each member's stake in the company in the following manner: Cunningham and Norris each had a 20% stake, Guidetti had a 5% stake, and Sloan held the remaining stake of the company. (Doc. 47-2 at 19). The 20% stake Cunningham owned was valued at $180,000. (Doc. 55 at 3 (<u>citing</u> Doc. 55-1 at 8)).

Cunningham acquired a 20% stake in Ecovery without investing any of his own money in the venture. Instead, Sloan fronted the money on Cunningham's behalf for Ecovery's start-up expenses. (Doc. 55 at 3). Cunningham claims he executed a promissory Note in favor of Mr. Sloan evidencing the $180,000 indebtedness in 2008. (Doc. 48 at 2 (<u>citing</u> Doc. 47-6 at 15)).[2] Cunningham testified that he understood he was obligated to repay Sloan under the 2008 Note. (Doc. 47-6 at 16). Cunningham is unable to locate the promissory Note (Id. at 15), but he specifically remembers signing one. (Id. at 15). Sloan said he "expected" Cunningham to repay him, but he does not remember a written agreement executed in 2008 to that effect. (Doc. 48 at 2).

Cunningham believed his 20% stake would be repaid to Sloan from future Ecovery distributions. (Doc. 55 at 3-4). The foundation for his belief stemmed from a verbal representation Sloan allegedly made in 2008 at the time of Ecovery's inception. (Doc. 55-2 at ¶

_____

stage of the proceeding for summary judgment purposes." <u>Cottrell v. Caldwell</u>, 85 F.3d 1480, 1486 (11th Cir. 1996).
[2] Cunningham does not reassert his recollection of executing a promissory Note at Ecovery's inception in his Response. (Doc 55). However, the Court easily infers as much because Cunningham described the 2010 Note as "new", (Doc. 55-2 at ¶ 7) and uses the plural form of Note. (Doc. 55 at 4). The "new" promissory Note, Cunningham explains in his affidavit, was – according to Sloan – needed to help Sloan bolster his credit.

4). Cunningham, in return, agreed to contribute his recycling industry expertise to Ecovery. (Doc. 55-1 at 9). As part of the oral agreement Sloan purportedly made with Norris and Cunningham, the three decided whatever profit they derived from Ecovery would first go toward taxes on the profits then be paid back to Sloan to settle the debt. (Doc. 55-1 at 4-5). Sloan denies the existence of the verbal agreement regarding the method of repayment. (Doc. 48 at 3).

In addition to the Articles of Incorporation, Ecovery's members also signed an Operating Agreement ("OA"). (Doc. 47-2). The OA detailed Ecovery's operating rules, including how it received financing. (Id. at 5). Specifically, Article Two addressed the company's finances. Section 2.1 detailed initial capital contributions. (Id.) In relevant part, § 2.1 reads: "The Company shall be capitalized by each Member contributing the property and cash set forth in the books and records of the Company" in exchange for a percentage membership interest. (Id.) The OA also defined "Capital Calls." Capital calls, according to the OA, occur upon the affirmative vote of the Members and are used to infuse funding into the company. Finally, the OA detailed the procedures for when a member defaulted. These procedures are limited to capital calls.

More than two years after Ecovery's inception, both Cunningham and Norris executed a promissory Note in favor of Sloan. (Doc. 55 at 4; Doc. 47-3). It is this Note, executed on November 15, 2010, and Cunningham's failure to repay that lie at the heart of this dispute.

Cunningham agrees that the 2010 Note evidenced a debt he owed for his initial membership contribution. (Doc. 55-2 at ¶ 8). Cunningham states that the 2010 Note represented the initial valuation of his 20% stake ($180,000) and interest accrued at the *Wall Street Journal* prime rate. (Id.) The Note did not provide Cunningham any additional funds nor did it provide him with an increased stake in Ecovery.

The 2010 Note begins with the words "For value received." (Doc. 47-3). This statement

of the consideration fails to identify when Cunningham actually received the value or the value he received. However, although the parties dispute the precise terms of the 2008 agreement (and dispute whether the 2008 agreement was memorialized into a written Note), neither party disputes the fact that Sloan provided $180,000 to Ecovery on Cunningham's behalf in 2008. (Doc. 55-2 at ¶ 3).

The 2010 Note contains a deadline for full repayment of the principal and interest. (Doc. 47-3). According to Cunningham's recollection, the 2008 Note was open-ended; it had no date of maturity. (Doc. 47-6 at 16). Under the unambiguous terms of the 2010 Note, Cunningham had to repay his debt by November 15, 2015.

After executing the 2010 Note, Sloan's son, Kevin, purchased a 20% interest in Ecovery from his father. (Doc. 55-7 at 3). Both Norris and Cunningham retained their original 20% stake in Ecovery. In the same month, Ecovery members began discussion to bifurcate Ecovery. (Id. at 4). The Sloans wanted to divide the company, with one focused on the equipment sales and one devoted to the processing aspect of the company. (Doc. 55-7 at 5). At the time of the separation discussions, Sloan told Cunningham he desired the separation occur "without any money changing hands[.]" (Doc. 55-2 at ¶ 9).

The parties executed a Separation Agreement to effectuate the bifurcation. (See Doc. 47-4). As part of the Separation Agreement, Cunningham received $1,311,447.94 in assets from Ecovery and assumed a corresponding $1,311,447.94 in Ecovery liability. (Id. at 4). In return, Cunningham executed a Transfer and Assignment of Membership Interest in Ecovery, LLC by which Cunningham transferred his 20% stake in Ecovery to Ecovery "for no monetary compensation" and subject to the terms of the Operating Agreement. (Doc. 55 at 6). On April 4, 2012, Cunningham signed a Mutual Release, which specifically excluded from the release

"obligations of the parties under the . . . Promissory Note dated November 15, 2010 from James P. Cunningham to Larry E. Sloan." (Doc. 47-5 at 2).

During the course of Cunningham's membership, Ecovery did not make any distributions or profits. (Doc. 55-2 at 3). In 2015, after Cunningham's departure in 2012, remaining Ecovery members received distributions. (Doc. 55 at 6). Norris received a distribution of $215,933. (Doc. 55-5 at 7).  Following Norris' receipt of the distribution, he paid Sloan $105,225 and indicated the payment on his November 2010 promissory Note. (Id. at 3).

## II.    Conclusions of Law

### a.  Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Rule 56(c) provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> *(2) Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> *(3) Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
>
> *(4) Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to

testify on the matters stated.

FED.R.CIV.P. 56(c).

The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

"An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 807 (11th Cir. 2010) (citation omitted). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992).

"To withstand a summary judgment motion, the non-moving party must establish that, based on the evidence in the record, there can be more than one reasonable conclusion as to the proper verdict." Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). "If a review of the evidence presented reveals that the non-movant has failed to produce evidence sufficient to support a jury verdict in his favor, then summary judgment should be granted." United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am., 894 F.2d 1555, 1558 (11th Cir. 1990). A sufficient issue exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249.

### b. Alabama Law Applies to the Note

"[A] federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits." Manuel v. Convergys Corp., 430 F.3d 1132, 1139 (11th Cir. 2005) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). Alabama courts hold that contract claims are governed by the laws of the state in which the contract was made, unless the contracting parties chose a particular state's laws to govern their agreement. Cherry, Bekaert & Holland v. Brown, 582 So.2d 502, 506 (Ala. 1991).

This case invokes subject matter jurisdiction pursuant to § 1332 (diversity jurisdiction). The 2010 Note at issue here was executed in Loxley, Alabama and includes a provision stating the "note is to be construed according to the laws of the State of Alabama." (Doc. 47 at 8; Doc 47-3). Cunningham does not dispute application of Alabama law, (See generally Doc. 55), and therefore, the Court will adjudicate this claim pursuant to Alabama law.

### c. Breach of Contract Elements

Under Alabama law, to prevail on a breach of a contract, a plaintiff must prove: existence of a valid contract, plaintiff's performance, defendant's failure to perform, and resulting

7

damages. See, e.g., Jones v. Alfa Mut. Ins. Co., 875 So.2d 1189, 1195 (Ala. 2003). In order to form a valid contract, there must be an offer and acceptance, consideration, and mutual assent. Fant v. Champion Aviation, Inc., 689 So.2d 32, 37 (Ala. 1997) (citing Pinyan v. Community Bank, 644 So.2d 919 (Ala. 1994)). Consideration "is an essential element" of contract formation and "is necessary to the enforceability or validity" of a contract. Kelsoe v. Int'l Wood Prods., Inc., 588 So.2d 877, 878 (Ala. 1991). The element of consideration is satisfied by "an act, a forbearance, a detriment, or a destruction of a legal right, or a return promise, bargained for and given in exchange for the promise." Shaffer v. Regions Fin. Corp., 29 So.3d 872, 881 (Ala. 2009) (quoting Kelsoe, 588 So.2d at 878). Further, "consideration must be present when the contract is made." Self v. Slaughter, 16 So.3d 781, 787 (Ala. 2008) (quoting Fant, 689 So.2d at 37).

### d. Analysis

#### 1. The 2010 Note Is Not Invalid For Lack of Consideration

Cunningham disputes the 2010 Note's validity due to lack of consideration. Specifically, Cunningham argues that the 2010 Note is not merely a memorialization of the 2008 agreement because the 2010 Note adds a maturity date. In other words, Cunningham contends that the consideration received in 2008 for the loan (membership in Ecovery) does not extend to this new contract repayment term. According to Cunningham, the maturity date in the 2010 Note resulted in no benefit for Cunningham.[3] His explanation for this argument goes as follows:

> Cunningham can show that the initial capital contribution loan was made in 2008; that the amount of the Note reflected the $180,000.00 initially extended plus interest running at the previously agreed interest rate pegged to the *Wall Street Journal* prime rate; that the Note did not constitute a mere renewal of the prior loan since the prior loan was not due

---

[3] The second Note also evidenced an increased principal sum ($210,245.82 instead of the original $180,000). This amount apparently represented the accrued interest. (Doc. 55-2 at 2).

and could not called by its terms; that the Note did not extend new monies to Cunningham or Ecovery on Cunningham's behalf . . . .

(Doc. 55 at 11).

Cunningham attempts to show that this is a new contract term via parol evidence. Specifically, Cunningham points to evidence of a prior oral agreement to repay the capital contribution loan out of Ecovery distributions and evidence of a 2008 Note. Sloan objects to Cunningham's attempt to introduce evidence that there was an oral agreement in 2008 regarding payment terms. Specifically, Sloan points out that because the alleged oral agreement contradicts the plain and unambiguous payment terms of the 2010 Note, it is clearly prohibited by the parol evidence rule.

The parol evidence rule provides that when parties reduce an agreement to a complete writing "no extrinsic evidence of prior or contemporaneous agreements will be admissible to change, alter or contradict such writing." Colafrancesco v. Crown Pontiac-GMC, Inc., 485 So.2d 1131, 1133 (Ala. 1986). Promissory Notes, like contracts, cannot be varied or contradicted by admission of parol evidence. Redmond v. Harrelson, 355 So.2d 356, 358 (Ala. 1978).

Equally true, however, is that "[p]arol evidence is always admissible to show that an instrument is void or to show a lack . . . of consideration." Parker v. McGaha, 321 So.2d 182, 185 (Ala. 1975). Moreover, "[p]arol evidence is . . . admissible to show failure of consideration", i.e., that the consideration contemplated was never received. Redmond, 355 So.2d at 358. And when the consideration is ambiguous ("for value received") or not recited in the note, parol evidence is allowed to establish the contemplated consideration. Id.

"Lack of consideration" and "failure of consideration" are two distinct concepts. Hardy v. Jim Walter Homes, Inc., 2008 WL 906455, at *7 (S.D.Ala. Apr. 1, 2008). The former term identifies "a contract formation issue which goes to the existence of a contract in the first

instance" while the latter is "a contract performance issue under which an otherwise valid contract may be voided by one party after the fact for the other party's failure to perform[.]" Id. at *7. Cunningham claims the 2010 Note lacked consideration.

Sloan cites Racquetball of Mobile, Inc. v. Wisser, 429 So.2d 1020, 1021 (Ala. 1983) [hereinafter Wisser] and Jackson v. Sample, 173 So. 510 (Ala. 1937), as support for his contention that Cunningham cannot rely on parol evidence to invalidate the contract. Sloan is correct that Wisser shares factual similarities to this case. In Wisser, the issue concerned repayment of a $100,000 promissory Note. The defendant argued the Note was to be paid by corporation funds once the corporation became profitable, however the Note said repayment was due on demand. Because the defendant attempted to introduce evidence that would alter the Note's terms, the court held such evidence fell was prohibited by the parol evidence rule. Wisser, 429 So.2d at 1021-22. However, Wisser's holding does not apply in instances in which a defendant seeks to demonstrate a lack of consideration.

Cunningham acknowledges that the law is not in his favor if the purpose of introducing the 2008 oral repayment agreement is to alter the 2010 Note. Instead, he attempts to invalidate the 2010 Note for lack of consideration, a course of action that allows parol evidence.

Taking Cunningham's evidence of an oral agreement and an open maturity date as true, the 2010 Note's maturity date of November 15, 2015 disadvantaged Cunningham. That is, he relinquished a Note that "could not [be] called by its terms," (Doc. 55 at 11), for a Note with an unconditional date of maturity five years in the future. In return, Cunningham received nothing more. Cunningham argues "without new consideration to Cunningham, the 2010 Note would not constitute a valid modification of the original loan agreement." (Doc. 63 at 2).

Of course, parties are free to modify contracts. See SE Prop. Holdings, LLC v. Sandy

Creek II, LLC, 954 F.Supp.2d 1322, 1343 (S.D.Ala. 2013) ("In Alabama, 'parties may modify the terms of their agreement . . . .'") (quoting McLemore v. Hyundai Motor Mfg. Ala., LLC, 7 So.3d 318, 332 (Ala. 2008)). See also Hardy, 2008 WL 906455, at *7 ("The law of Alabama is well established that 'parties are free to modify agreements . . . .'") (quoting Cavalier, 862 So.2d at 641). And, Alabama courts have held that "[p]arties to a written contract may by mutual consent *without other consideration* orally alter, modify or rescind the contract." Cavalier, 862 So.2d at 640–41 (quoting Watson v. McGee, 348 So.2d 461, 464 (Ala. 1977)) (emphasis added).[4] Cunningham's signature, witnessed by Norris, clearly indicates mutual assent. Thus, the contract is not invalid for lack of additional consideration.

The precedent to which Cunningham cites to the contrary predates the Cavalier ruling decided in 2003. See Allied Mills, Inc. v. St. John, 275 Ala. 69 (1963); Moore v. Williamson, 213 Ala. 274, (1925); Shriner v. Craft, 166 Ala. 146 (1909). Additionally, it is not altogether clear that Moore supports Cunningham's position. See Moore, 213 Ala. at 278 (stating, in part, "when [a contract] is . . . supplemented by additional matter not covered . . . the original consideration is enough for the new agreement").

Moreover, when parties execute a second agreement that covers the same subject matter but contains inconsistent terms, "the later agreement supersedes the earlier agreement." Cavalier Mfg., Inc., 862 So.2d at 641 (quoting CMI Int'l, Inc. v. Intermet Int'l Corp., 649 N.W.2d 808, 811 (2002)). Cunningham concedes that the person to which the $180,000 was due under the alleged 2008 Note was Sloan, and according to the terms of the 2010 Note, that person remained Sloan. Because the 2010 Note indisputably covered the same subject matter as the 2008 Note,

---

[4] The Eleventh Circuit acknowledged this rule in dicta in an unpublished case. Samuels & Assocs., Inc. v. Boxcar Foods, USA, Inc., 286 F. App'x 708, 714 n.9 (11th Cir. 2008) ("In any event, the Alabama Supreme Court recently stated: Parties to a written contract may by mutual consent *without other consideration* orally alter, modify or rescind the contract.") (internal quotation marks and citations omitted).

the 2010 Note supersedes the 2008 Note.

Cunningham also argues that because he did not personally receive the money, he did not receive anything of value and therefore the 2008 and 2010 Notes lacked consideration. He argues that absent Ecovery turning a profit, Cunningham did not receive sufficient consideration for the 2008 Note because the "capital contribution went to Ecovery, not Cunningham" and "Cunningham never received personal access to or usage of any of this money." (Doc. 55 at 11). This reasoning fails to recognize that consideration can benefit a third party, i.e., Ecovery, if the promisor intended. See Christie v. Durden, 88 So. 667, 668 (Ala. 1921) ("A consideration sufficiently exists or is implied if it arises from any act of the plaintiff from which the defendant or a third party at defendant's instance derived a pecuniary benefit, if such act is performed by the plaintiff to the desired end, with expressed or implied assent of the defendant."). The argument also ignores the undisputed fact that Cunningham received a 20% stake in Ecovery. Therefore, even though the $180,000 went to Ecovery and not Cunningham, consideration still existed.

### 2. The OA Cannot Alter the 2010 Note's Unambiguous Terms

Cunningham next argues Ecovery's OA adds credence to his understanding of the original 2008 agreement. He cites to §2.4 for his understanding that the original $180,000 was to be repaid from profits derived from Ecovery – not his personal account. Profits due him from Ecovery were to form the basis for the repayment. The OA, Cunningham argues, "plainly reveals that a member may advance capital contributions on behalf of another member; may treat that contribution as a loan to the debtor member . . . [and] the contributing member must be repaid for the loan out of company distribution 'until such time as the interest and principal are paid in full[.]'" (Doc. 55 at 9-10 (quoting Doc. 47-2 at 2-3)). To support his argument, he relies on an

edited snippet of § 2.4. The entire provision provides that:

> 2.4.   Defaulting Members.   If any Member is unwilling or unable to make, within thirty (30) days, any or all of such Member's proportionate contribution upon a capital call, then the other Members shall each have the right to make up such deficit amount in any proportion that they decide. If the other Members, or any one of them, make a contribution pursuant to the foregoing, such Member(s) shall have the option to treat the contribution as additional capital of the Company, or to treat the contribution as a loan to the defaulting Member. Such election shall be made, in writing, at the time the contribution is made.

> (a)   If the contributing Members elect to treat their contribution as additional capital, then after such contributions are made, each Member's percentage Membership Interest in the Company (and their respective interests in the net profits, net losses and cash flow) shall be adjusted and determined by dividing the total amount of capital contributed to the Company by such Member since the Company's inception by the total amount of capital contributed to the Company since its inception by all Members. The resulting quotient, with respect to each Member, shall be the adjusted percentage Membership Interest of such Member in the capital of the Company (and in the net profits, net losses and cash flow).

> (b)   If the contributing Members elect to treat their contributions as a loan to the defaulting Member, then no adjustment shall be made to the percentage capital interest of the contributing Members, and each Member's share in the profits and losses and cash flow of the Company shall remain the same. The defaulting Member's capital account shall be increased in the same amount as would occur if the defaulting Member had made the additional capital contribution in the amount of the loan. In addition, the defaulting Member's share in the net profits, net losses and cash flow of the Company shall be adjusted, if necessary, as if he or she had made a contribution to the capital of the Company in the amount of such loan. The amount advanced by the Members on behalf of the defaulting Member shall be a debt of the defaulting Member to the contributing Members and shall bear interest at the prime rate or base lending rate as published in the Wall Street Journal as of the date such loan is made and shall be repaid out of available cash flow after the payment of all other amounts due on debt owed to third parties but prior to any distributions to the Members. Thereafter, all distributions of cash from the Company due to the defaulting Member shall be paid to the Members who elected to treat their contribution as loan until such time as the principal and interest of the loan is paid in full.

(Doc. 47-2 at 5-6).

Cunningham's effort to use the OA to alter the Notes' terms is unavailing for two reasons. First, §2.4 applies in the context of capital calls, not capital contributions. Although Cunningham argues §2.4 applies to the $180,000 Sloan loaned Cunningham to invest in Ecovery, a fuller reading of Article Two disputes such an argument. The OA, in §2.1, identified and

explained "Initial Capital Contributions" a term under which the $180,000 fits. Capital calls are designed to continue operations of the company if the "income produced by the company [is] insufficient . . . ." (Doc. 47-2 at 5). Initial capital contributions, however, determine the member's interest in the company when members initially invest. It is undisputed that he $180,000 went towards capitalizing and starting the company and that the $180,000 determined Cunningham's membership interest. The $180,000 was an initial capital contribution (§2.1) not as part of a "Capital Call[]" (§2.3). (Doc. 47-2).

Second, the 2010 Note does not permit introduction of parol evidence to alter, explain, or supplant its unambiguous terms. Colafrancesco, 485 So.2d at 1133.

### 3. **Cunningham Breached the 2010 Note**

Sloan must show the 2010 Note is valid, Sloan performed, Cunningham has not repaid the money, and that Sloan suffered damages. Jones, 875 So.2d at 1195. "If the court determines that the terms [of the contract] are unambiguous (susceptible of only one reasonable meaning), then the court will presume that the parties intended what they stated and will enforce the contract as written." Cavalier Mfg., Inc., 862 So. 2d at 640 (quoting Homes of Legend, Inc. v. McCollough, 776 So. 2d 741, 746 (Ala. 2000)). Pursuant to Alabama law, construal of unambiguous agreements properly falls within the court's purview. Steward v. Champion Int'l Corp., 987 F.2d 732, 734 (11th Cir. 1993) (citing Terry Cove North, Inc. v. Baldwin County Sewer Auth., Inc., 480 So.2d 1171, 1173 (Ala. 1985)). See also Warrior Drilling & Eng'g Co. v. King, 446 So.2d 31, 33 (Ala. 1984) ("With regard to the construction of instruments, this court has said that if an instrument is unambiguous, its construction and effect are questions of law.").

Cunningham signed the Note, (Doc. 47-3), the Note plainly identified to whom payment was due (Larry Sloan) and who promised to make the payment (James P. Cunningham). (Doc.

47-3). The parties executed the 2010 Note after they allegedly executed the 2008 Note. Cunningham has not paid the debt, despite the maturity date elapsing. (Doc. 47-6 at 20). Because no dispute over a fact "that might affect the outcome" exists, and because Sloan is entitled to judgment as a matter of law, summary judgment is appropriate. Anderson, 477 U.S. at 248.

III.    **Conclusion**

Based on the foregoing, it is **ORDERED** that Sloan's Motion for Summary Judgment as to Count One is **GRANTED**. Because Cunningham did not oppose Sloan's Motion for Summary Judgment as to the Counterclaims, it is **ORDERED** that Sloan and Ecovery's Motion for Summary Judgment as to all of Cunningham's Counterclaims against both Sloan and Ecovery is **GRANTED**.

Sloan's Motion for Leave is **GRANTED** as follows:

▪ Sloan shall supplement the record on or before December 6, 2017, with calculations of the specific amount of damages to which he is entitled under the terms of the promissory Note and consistent with this Order. Sloan shall also submit a proposed judgment.

▪ Cunningham may respond to Sloan's supplement on or before December 13, 2017.

**DONE** the 29th day of November 2017.

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**